IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>      v.<br><br>JACK AMADEUS LASOTA,<br>   a/k/a "Andrea Phelps,"<br>   a/k/a "Ann Grimes,"<br>   a/k/a "Anne Grimes,"<br>   a/k/a "Canaris,"<br>   a/k/a "Julia Lasota," and<br>   a/k/a "Ziz,"<br><br>      **Defendant** | **CRIMINAL No. JKB-25-CR-176** |

### RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO CONTINUE THE SCHEDULED MOTIONS HEARING AND TRIAL

The United States of America, by and through its attorneys, Kelly O. Hayes, United States Attorney for the District of Maryland, and Jared M. Beim, Assistant United States Attorney for said District, submits this Response to defendant Jack Amadeus LaSota's Motion to Continue the Motions Hearing and Trial (ECF No. 44). For the reasons that follow, the Court should deny Defendant's motion.

#### I. PROCEDURAL BACKGROUND

A federal grand jury charged Jack Amadeus LaSota ("LaSota") with possession of firearms and ammunition as a fugitive from justice on June 18, 2025. ECF No. 1. At this time – and since then – LaSota has been held in pretrial state custody pending a state trial in Allegany County, Maryland. At the time of indictment, LaSota's state trial date was scheduled for on or about August 13, 2025. However, this trial date was subsequently postponed until December 1, 2025.

On November 12, 2025, LaSota, through counsel, filed a "Motion for Speedy Trial." ECF No. 6. In this motion, LaSota argued, among other things, that the Government was "thwarting this right" to a speedy trial, and directly "request[ed] a Speedy Trial" before this Court. *Id.* at 2.

In response to LaSota's motion, the Government and the U.S. Marshal Service worked to expeditiously accommodate his request a week ahead of the then-scheduled state trial, notwithstanding the lack of legal merit to his claim. LaSota was brought before the Honorable Douglas R. Miller for an initial appearance and arraignment on November 24, 2025, at 11:30 AM. ECF No. 13. LaSota's state trial was subsequently postponed to February 9, 2026.

On December 17, 2025, this Court set various deadlines for this federal case, including a Motions Hearing on March 12, 2026 and a trial to begin on May 4, 2026.[1] In line with these deadlines: On February 2, 2026, LaSota filed motions to dismiss the indictment and to suppress certain evidence. ECF Nos. 29, 30. The Government filed responses on February 17, 2026. ECF Nos. 34, 35. And LaSota filed replies on February 24, 2026. ECF Nos. 37, 40. In the midst of this exchange of briefing, on February 9, 2026, the state trial was postponed to June 1, 2026.

On February 27, 2026, LaSota filed the underlying motion to continue the scheduled federal trial until after the completion of the anticipated June trial in Allegany County. LaSota primarily argues (1) that potentially helpful witness testimony will be elicited during a subsequent state motions hearing in Allegany County, and (2) LaSota's state co-defendant Michelle Zajko may "testify favorably" on LaSota's behalf in the federal motions hearing and trial. ECF No. 44 at 3.

---

[1] While Counsel for LaSota objected to the Government's anticipated length of trial at the Initial Appearance and Arraignment, believing that he expected the trial to take much longer, Counsel did not state during the Scheduling Hearing before this Court that he expected a large number of witnesses to testify at the Motions Hearing.

## II. ARGUMENT

After demanding a speedy initial appearance and agreeing to this Court's schedule, LaSota has proffered no reasonable justification for delaying the scheduled motions hearing and trial. LaSota is able to subpoena any witness he wishes for the motions hearing and trial, and will have the right to cross-examine any and all of the Government's witnesses. Additionally, LaSota has proffered no potentially-exculpatory testimony that Michelle Zajko ("Zajko") could – or would – offer in this case. LaSota's vague and threadbare justifications are insufficient to justify the requested delay, and this Court should not use its discretion to postpone this scheduled trial this late in the process – especially after LaSota petitioned this Court for a speedy trial in the first place.

### A. LaSota Demanded a Speedy Trial, and the Government Obliged

As discussed above, LaSota filed a motion in this Court ahead of the then-scheduled December 2025 trial date both claiming that the Government was "thwarting" his speedy trial rights and specifically requesting that this Court grant him a speedy trial. Now, after two separate trial delays in Allegany County and less than two weeks before the federal motions hearing, LaSota has had a change of heart.

Based on LaSota's motion and representations regarding his desire for a speedy trial, the Government allocated significant resources, subpoenaed witnesses, and has otherwise made substantial efforts to accommodate LaSota's request. Moreover, LaSota previously publicly alleged to a reporter on camera that prosecutors – presumably in Allegany County – were violating his speedy trial rights. *See* THE ASSOCIATED PRESS ARCHIVE, *Zizians appear in court ahead of Maryland trespassing trial* (YouTube, Jan. 16, 2026, at 0:17-0:20), https://www.youtube.com/watch?v=cMcaVYiOnsU (LaSota: "And they're violating our speedy trial rights.") (last viewed March 2, 2026). LaSota cannot have it both ways: both claiming that his speedy trial rights are being violated but also that the trial should be delayed.

3

Additionally, while a defendant's interest in a speedy trial is important, courts have consistently recognized that the public also has an interest in a speedy trial. *See, e.g.*, *United States v. Brooks*, 734 F. Supp. 3d 447, 483 (D. Md. 2024) (Hollander, J.) ("I am mindful that the statute takes into account the public's independent interest in the speedy resolution of cases." (citing 18 U.S.C. § 3161(h)(7)(A)). Here, LaSota's shifting strategic considerations, including whether or not certain witnesses will be called in a state court suppression hearing, do not outweigh the public interest in a speedy trial.

### B. The State Trial has been Delayed Three Times Already, and the Likelihood of Further Postponement Cannot be Discounted

As shown by Maryland Judiciary Case Search, LaSota's state case was scheduled for a jury trial in August 2025, December 2025, February 2025, and now June 2025. *See* Exhibit 1. As mentioned above, the scheduled state trial in Allegany County involves two other defendants in addition to LaSota and significantly more charges. The chances of circumstances necessitating further delay are sizeable, and accordingly there is a significant possibility that delaying the federal trial until July will not post-date the state trial.

### C. LaSota has Failed to Proffer Any Reasonable Justifications for Postponement

#### 1. LaSota May Subpoena any Desired Witnesses

LaSota's first argument that various witnesses may testify at a future state motions hearing is no reason to delay the Court's scheduled proceedings. While the Government agrees that both the state and federal cases involve LaSota's encounter with law enforcement on February 16, 2025 in Frostburg, Maryland, the state case involves various different charges (*e.g.*, state-level trespassing) and two other co-defendants not charged in the instant case (*i.e.*, Michelle Zajko and Daniel Blank). As such, much if not most of the future testimony during those proceedings will be irrelevant to the case at bar.

While it is understandable for LaSota to desire a second bite at the apple when making strategic decisions about which witnesses to call at trial and what to ask them, this is not a sufficient reason to delay the scheduled federal proceedings. LaSota may use the subpoena power to call any and all witnesses he desires to testify before the Court, including the exact list delineated at ECF No. 44-3. LaSota can additionally call Zajko to testify if he wishes. However, the possibility of receiving more useful testimony later is no reason to justify postponing the scheduled trial.

### 2. Speculative Claims about Zajko's Theoretical Testimony are Insufficient to Justify Delay

LaSota makes only the most threadbare claim about what testimony Zajko even *could* – much less *would* – offer at a motions hearing or at trial. In entirety, LaSota claims that:

> Discovery provided to counsel shows that the two guns which Ms. LaSota is alleged to have been in possession of were purchased by, and registered to, Ms. Zajko. Her testimony as to whether Ms. LaSota had access to them, or jointly possessed, is crucial evidence that the defense seeks to adduce.

ECF No. 44 at 4. The low-level of specificity here, if accepted by the Court, would justify indefinite delay of trial in numerous cases involving a speculative witness facing legal jeopardy.

Depending on the precise nature of the testimony that LaSota seeks from Zajko, it is possible that the Government would agree to stipulate to certain facts. For instance, LaSota states that the relevant firearms "were purchased by, and registered to, Ms. Zajko." *Id.* The Government does not anticipate disputing that fact. Moreover, this case primarily centers on the allegation that LaSota possessed firearms and ammunition as a fugitive from justice. The Government, in significant part, will seek to prove this possession with forensic evidence that it believes ties LaSota to the firearms mentioned in the indictment. This is not a case primarily centered on conflicting witness testimony about who saw what, where a co-defendant's testimony is directly relevant to an element of the crime.

Moreover, Zajko faces a weapons-related charge by complaint in the District of Vermont for allegedly violating 18 U.S.C. § 924(a)(l)(A). *See* Complaint, *United States v. Michelle J.*

5

*Zajko*, No. 2:25-MJ-21-1 (D. Vt. February 18, 2025).  It does not appear that Zajko is currently represented by an attorney in that matter, and LaSota has not indicated whether any such present or future attorney will consent to her testimony in the District of Maryland.

For these reasons, the Government disputes that delaying the motions hearing and trial will allow LaSota to obtain useful testimony from Zajko, and as such, delay is unwarranted.

### D.  Even Under LaSota's Analogy to Severance, Delay Would be Unwarranted

LaSota argues that in this context of seeking to delay trial to potentially obtain useful testimony from an individual currently undergoing judicial proceedings in another jurisdiction, "the area of caselaw that provides the best guidance for the Court is that related to severance." ECF No. 44 at 3.

The Government disagrees.  However, even under this standard for severance, LaSota would not have a reasonable claim to delay the motions hearing and trial.  As LaSota mentions, severance based on the asserted need for a co-defendant's testimony requires the defendant to establish "(1) a bona fide need for the testimony of his co-defendant, (2) the likelihood that the co-defendant would testify at a second trial and waive his Fifth Amendment privilege, (3) the substance of his co-defendant's testimony, and (4) the exculpatory nature and effect of such testimony." *United States v. Parodi*, 703 F.2d 768, 779 (4th Cir. 1983).  The Fourth Circuit has further warned that the defendant must demonstrate that the "co-defendant's testimony would be more than a 'vague and conclusory statement ... of purely cumulative or negligible weight or probative value,'" and that "[t]he movant's showing in this regard must be sufficiently definite so that the trial court can evaluate the 'exculpatory nature and effect' of the co-defendant's potential testimony." *United States v. Reavis*, 48 F.3d 763, 767 (4th Cir. 1995) (quoting *id.* at 780) (ellipsis in original).

For the reasons discussed above, all four factors discussed in *Parodi* counsel against delaying trial.

As to the bona fide need for testimony, LaSota has not even stated what testimony Zajko could offer. Her counsel's letter simply states that Zajko could provide information that Zajko subjectively believes would be exculpatory. As mentioned above, it's possible that the Government would be willing to stipulate to the same facts that Zajko could offer as testimony. This directly flies in the face of the Fourth Circuit's warning in *Reavis* that the potential testimony sought must be more than a "vague and conclusory statement." *Id.*

As to the likelihood that Zajko would waive her Fifth Amendment privilege and testify before this Court, while her Allegany County attorney stated that she is "willing to testify as a defense witness," the presence of a weapons-charge in the District of Vermont, on which Zajko is currently unrepresented, significantly weakens any such likelihood.

Zajko is believed to have provided a firearm to an individual who used that firearm to murder a Border Patrol Agent. ECF No. 1, Attachment 1 ¶¶ 4-7 (Complaint Affidavit), *United States v. Michelle J. Zajko*, No. 2:25-MJ-21-1 (D. Vt. February 18, 2025). Zajko's role in supplying that firearm opens her up to potential arguments, among others, that she aided and abetted that murder, or that she is liable for the death of that Border Patrol agent under a *Pinkerton* theory.

The likelihood of Zajko testifying on behalf of the defendant is further diminished when viewed in the context of her public statements. In a 20-page letter sent to the Associated Press by her attorney, Zajko casts doubt on her willingness to testify on behalf of a co-defendant, even if compelled to do: "Zajko wrote that she believes she may be asked to testify against Youngblut,[2] but 'I will refuse to participate on principle, as I don't believe Youngblut is going to receive a fair trial.'" Peter D'Auria, *In 20-page letter, 'Zizian'-linked detainee professes innocence, rebuts news coverage*, VTDIGGER (Apr. 17, 2025), https://vtdigger.org/2025/04/17/in-20-page-letter-zizian-linked-detainee-professes-innocence-rebuts-news-coverage (last accessed March 2, 2026).

---

[2] Youngblut is charged in the United States District Court for the District of Vermont for, among other things, the murder of a United States Border Patrol Agent. ECF No. 96 (Superseding Indictment), *United States v. Teresa Youngblut*, No. 2:25-CR-15 (D. Vt. August 15, 2025).

As to the substance of the co-defendant's testimony, as with the first factor, the Government is unaware of the nature of the substance of Zajko's theoretical testimony. Given the forensic evidence (fingerprints/DNA) connecting LaSota to the firearms, it is unclear how Zajko's testimony could be exculpatory. It is also far from clear that Zajko would be willing to testify after her state court trial, regardless of the outcome, with another related criminal charge pending in a different federal court on which she is not represented (and presumably has not been advised of the potential adverse consequences of testifying on her pending District of Vermont criminal charge), and given her general stance against the judicial system.

Finally, as to the exculpatory nature and effect of such testimony, LaSota has not asserted how Zajko's theoretical testimony would be exculpatory. For instance, Zajko testifying that she purchased the weapons charged in the indictment would not be exculpatory. As discussed *supra*, "the Government, in significant part, will seek to prove" LaSota's possession of firearms and ammunition "with forensic evidence that it believes ties LaSota to the firearms mentioned in the indictment." LaSota's threadbare proffer of exculpatory testimony also conflicts with the Fourth Circuit's warning in *Reavis* that the defendant must make a showing "sufficiently definite so that the trial court can evaluate the 'exculpatory nature and effect' of the co-defendant's potential testimony." *Id.* Further, the letter from Zajko's counsel does not appear to reference, nor acknowledge, the existence of the firearm charge pending in the District of Vermont, which would be within the scope of her direct (and cross) examination if she were called to testify. These facts, coupled with the fact that Ms. Zajko is unrepresented on that Vermont charge, make her testimony all the less likely to occur.

Although LaSota failed to establish any of the four *Parodi* factors, the Fourth Circuit instructed that even with such a showing, the Court must then "(1) examine the significance of the testimony in relation to the defendant's theory of defense; (2) assess the extent of prejudice caused by the absence of the testimony; (3) pay close attention to judicial administration and economy; (4) give weight to the timeliness of the motion, and (5) consider the likelihood that the co-defendant's testimony could be impeached." *Parodi*, 703 F.2d at 779.

Here, the significance of any such testimony and any prejudice from not having it are low, judicial economy is negatively affected by delay, the timing of LaSota's motion is – while not at the last minute – fairly late in the process, and any such testimony could likely be impeached by police body-worn camera showing LaSota's possession of a holster and multiple pistol magazines, and relevant forensic evidence (fingerprint/DNA) connecting LaSota with firearms.

Even under LaSota's analogy to severance analysis, postponement of the motions hearing and trial is unwarranted.

### III.  CONCLUSION

For all of the foregoing reasons, LaSota's Motion to Continue the Motions Hearing and Trial (ECF No. 44) should be denied.

Respectfully submitted,

Kelly O. Hayes
United States Attorney

/s/
Jared M. Beim
Assistant United States Attorney
36 South Charles Street, Fourth Floor
Baltimore, Maryland 21201
(410) 209-4800

**CERTIFICATE OF SERVICE**

    I HEREBY CERTIFY that a copy of the foregoing was filed with the Clerk of the Court using the CM/ECF system.

                                                /s/
                                        Jared M. Beim
                                        Assistant United States Attorney