**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

**UNITED STATES OF AMERICA** *

**v.** * **Crim. No.: JKB-25-176**

**ZIZ LASOTA** *

* * * * * * * * * * * * *

**DEFENDANT'S SUPPLEMENTAL MOTION TO SUPPRESS EVIDENCE SEIZED PURSUANT TO A SEARCH WARRANT**

Comes Now Defendant, Ziz LaSota, by and through undersigned counsel, and submits this Supplemental Motion to Suppress Evidence Seized Pursuant to a Search Warrant. For the reasons stated herein, in her Motion to Suppress and Reply, as well as those which will be advanced at a motions hearing, Ms. LaSota requests this Court suppress the evidence that was acquired as a result of an illegal search, seizure, and arrest which occurred on February 16, 2025 and subsequent search of a box truck on February 19, 2025 pursuant to a warrant.

**STATEMENT OF FACTS**

Counsel adopts the Statement of Facts filed in her Motion to Suppress Search and Reply to Response filed at ECF 30 and 37 and supplements with information regarding a search and seizure warrant.

During the detention and arrest of Ms. LaSota and her companions on February 16, 2026, officers entered a box truck and found a rifle, a handgun, and ammunition among other items of possible evidentiary value.[1] Ms. LaSota argues the detention was without reasonable suspicion of a crime; the arrest was without probable cause; and the search was the product of an illegal

[1] The boxcar in question is labeled Subject Vehicle 1, a white 2001 GMC box truck. This motion to suppress focuses on evidence obtained from this truck. To the extent the government intends to use evidence from Subject Vehicle 2, the same arguments apply to the seizures from that truck. Further, Subject Vehicle 2 was seized without ANY suspicion or cause, much less probable cause, that there was evidence of criminality in the truck.

entry into a box truck that Ms. LaSota and a companion had been ordered at gunpoint to exit. The search of the box truck was without probable cause to believe evidence would be within the truck.

The government takes the contrary legal position and seems to suggest in its pleadings that there was no search on February 16, 2026 because nothing was actually taken by law enforcement until a search warrant was executed. State authorities apparently relinquished control of the box trucks to federal agents who removed them to an FBI facility in Windsor Mill, Maryland. A search warrant was obtained and executed on February 19, 2026. The Affidavit for this warrant detailed for Magistrate Judge Copperthite the circumstances of the arrest 3 days earlier and the various items seen when officers entered the box truck, including a rifle, handgun, and ammunition found in the truck.

**ARGUMENT**

In her original motion to suppress, Ms. LaSota argued that the FBI's search warrant for the box trucks was not sufficiently attenuated to dissipate any taint from the illegal entry of the truck. Any evidence seized from the truck should therefore be suppressed as fruit of the poisonous tree. In fact, the warrant relies upon the February 16 search. But for the illegal search of the box truck, the Affiant would not have had any reason or cause to search for and include other events allegedly committed by other members of the group labeled "Zizians". These events are only relevant knowing that there were items of evidence in the truck. They are additional facts tainted by the illegal search and seizure of the weapons and ammunition – not an independent source to otherwise make a finding of probable cause. Had there been an independent source provided to otherwise make a finding of probable cause, the warrant may be attenuated. There was no independent source.

**1. The FBI's search warrant for the box trucks was not sufficiently attenuated to dissipate any taint, and therefore, any evidence seized from the truck should be suppressed as fruit of the poisonous tree.**

The government argues that suppression is not warranted because the search warrant was sufficiently attenuated to dissipate any taint from an illegal search on February 16, 2026.[2] Their argument relies upon the Supreme Court's holding in *Segura v. United States,*468 U.S. 796 (1984). The parties agree the principles of *Segura* are controlling here, but disagree as to its application to the facts at hand. In ruling that a search warrant was sufficiently attenuated from the taint of an illegal search, the Supreme Court stated the following:

> The illegality of the initial entry, as we will show, has no bearing on the second question. The resolution of this second question requires that we determine whether the initial entry tainted the discovery of the evidence now challenged. On this issue, we hold that the evidence discovered during the subsequent search of the apartment the following day pursuant to the valid search warrant issued wholly on information known to the officers before the entry into the apartment need not have been suppressed as "fruit" of the illegal entry because the warrant and the information on which it was based were unrelated to the entry and therefore constituted an independent source for the evidence under *Silverthorne Lumber Co.* v. *United States,* 251 U. S. 385 (1920).

*Segura* at 799. The facts in the *Segura* case were that officers arrested the defendant and took him to his apartment. They entered without permission and conducted a security check where they saw evidence. Nineteen hours later, the officers executed a search warrant that was based *wholly* on evidence that the police had developed prior to the entry and search. The Affidavit did not contain facts relating to the arrest, entry, search, and sighting of evidence. The Supreme Court found there was an independent source for the probable cause and as such, the evidence seized was not derivative of the illegality or "fruit of the poisonous tree". Notably, the Supreme Court found the officers came at the evidence not by "exploitation of the [initial] illegality" but

[2] The government first argues the search was valid but even if not valid, they argue the warrant was sufficiently attenuated to dissipate taint from the illegal entry of the truck.

"instead by means *sufficiently distinguishable* to be purged of the primary taint." *Segura*, at 804-805 citing *Wong Sun v. United States*, 371 U.S. 471, 488 (1963).

In contrast, the Affidavit for the box truck specifically set out the circumstances of the arrest of Ms. LaSota and that officers found the evidence in the truck. The tainted evidence was set out front and center in the warrant, listed as the first incident considered under the probable cause section. The Affiant omitted how the officers saw this evidence and thus exploited it in the Affidavit. The manner in which the events were portrayed suggested to the magistrate that this was a valid trespass investigation (not that the owner was letting them stay until the next day) and that the officers saw the evidence legally, giving the magistrate judge every reason to think this event should be highly considered as the primary probable cause for the warrant. In finding a warrant was derived from an independent source, the Supreme Court opined:

> The ultimate question, therefore, is whether the search pursuant to warrant was in fact a genuinely independent source of the information and tangible evidence at issue here. This would not have been the case if the agents' decision to seek the warrant was prompted by what they had seen during the initial entry,[3] or if information obtained during that entry was presented to the Magistrate and affected his decision to issue the warrant. On this point the Court of Appeals said the following:
>
> "[W]e can be absolutely certain that the warrantless entry in no way contributed in the slightest either to the issuance of a warrant or to the discovery of the evidence during the lawful search that occurred pursuant to the warrant."

*Murray v. United States,* 487 U.S. 533, 542 (1988). The Fourth Circuit has interpreted the above to mean:

> In *Murray,* the Supreme Court explained that to conclude that a later search conducted pursuant to a warrant was independent of an earlier, unlawful search, two findings must be made: first, that officers "did not include in their application for a warrant any recitation of [their earlier unlawful observations]"; and second, that they "would have sought a warrant" even if they had not conducted the unlawful search. *Id.* at 543, 108 S.Ct. 2529; *see also United States v. Mowatt,* 513 F.3d 395, 404 (4th Cir. 2008).

*U.S. v Bullard*, 645 F. 3d 237, 244 (4th Cir. 2011). The Supreme Court in *Murray* placed the burden on the government to establish that "no information gained from the illegal [search] affected either the law enforcement officers' decision to seek a warrant or the magistrate's decision to grant it." 487 U.S. at 540. Here, the Affiant prominently included the facts related to the search on February 16. There was no investigation prior to Mr. Broadwater's 911 call and no information that would allow for an officer to think there would be evidence of a crime in the box truck. The officers clearly had no plans for a search warrant until they conducted an unlawful search. The taint from the initial illegality is great and *Segura* clearly supports invoking the exclusionary rule to prevent the use of the evidence at trial.

The circumstances known to the officers suggested the individuals were living in the box trucks. The search of the box truck required probable cause that evidence would be within the truck whether the truck was considered a vehicle or a home. See *Carrol v. United States*, 267 U.S. 132 (1925). The facts here are very similar to those in *Segura* and to the principle in *Chambers v. Maroney*, 399 U.S. 42 (1970). In *Segura*, law enforcement illegally entered a house, saw evidence, and obtained a search warrant (without using the initial illegal entry in the Affidavit). The question of the legality of the search without a warrant was not before the Supreme Court. Yet the Court accepted "the illegality of this initial entry" and further stated, "[a]s the Court Of Appeals held, absent exigent circumstances, the entry may have constituted an illegal search, or interference with petitioners' privacy interests, requiring suppression of all evidence observed during the entry." *Segura*, at 811. In *Chambers v. Maroney*, law enforcement seized and impounded an automobile with probable cause while obtaining a search warrant. When they went into the truck to clear it and ensure their own safety, they saw evidence. The Supreme Court noted it "has frequently approved warrantless seizures of property, on the basis of

probable cause, for the time necessary to secure a warrant, *where a warrantless search was either held to be or likely would have been held impermissible".* *Chambers* at 51, emphasis supplied, (1970). Law enforcement here opened the truck passenger door; ignored an attached open lock and partially raised the back door to the bed; later opened the back door all the way; moved a bag; and only then saw a rifle. This was a search without probable cause to believe there would be evidence of trespassing or any crime within the truck. Like *Segura* and *Chambers*, the original search was "illegal" and thus tainted this search warrant.

For the reasons stated above, the Defendant requests a hearing on the searches conducted on February 16 and 19, 2025 and requests that evidence obtained from the searched be suppressed.

Respectfully submitted,

____________________________

Teresa Whalen, Bar No. 25245
Law Office of Teresa Whalen
801 Wayne Ave., Ste. 400
Silver Spring, MD 20910
301-728-2905